UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED
AUG 28 2025
AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 5:25-cr-104-KKC

UNITED STATES OF AMERICA                        PLAINTIFF

V.                              **PLEA AGREEMENT**

HARLAN RAY HIGHFIELD                      DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1 through 7 of the Information, charging violations of 18 U.S.C. § 1014, Crop Insurance Fraud.

2. The essential elements of Count 18 U.S.C. § 1014 are:

    (a) That the Defendant made a false statement or report to the Federal Crop Insurance Corporation or a company the Corporation reinsures;
    (b) That the Defendant made the false statement or report knowing it was false; and
    (c) That the Defendant did so for the purpose of influencing in any way the action of the Federal Crop Insurance Corporation or a company the Corporation reinsures.

3. As to Counts 1 through 7, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

    (a) The Defendant owned and rented farmland in Mason, Lewis, Bracken, Robertson, and Fleming Counties, on which he grew tobacco, among other crops. He maintained insurance coverage over his tobacco crop from at least 1995 to 2023.

1

(b) For Crop Years 2013 through 2023, the Defendant obtained crop insurance in his own name as well in the names of nominee farmers, who were family members of the Defendant.

(c) For each of the years, the Defendant had the nominee farmers sign crop insurance policies wherein the nominee farmers claimed that they had a 100% insurable interest in the crop, when the Defendant knew, in fact, the crop belonged to him. This allowed the Defendant to get new producer status and higher guarantees on some policies, hide his crop production, avoid high-dollar reviews, and influence the FCIC to obtain indemnity payments.

(d) For Crop Years 2016 through 2020, and Crop Years 2022 and 2023, the Defendant submitted production worksheets which required the Defendant to list acreage and production owned by him. In each of the relevant years, although the Defendant certified, under penalty of perjury, that his production worksheets were accurate, he failed to list the acreage or production in the names of the nominees, which belonged to him, in the reports.

(e) Regarding Count 1, on February 22, 2017, the Defendant certified a production worksheet for Crop Year 2016 that failed to account for all of his production, including the production listed under a nominee farmer's name, thereby influencing the FCIC to pay an indemnity payment to the Defendant to which he was not entitled.

(f) Regarding Count 2, on December 3, 2017, the Defendant certified a production worksheet for Crop Year 2017 that failed to account for all of his production, including the production listed under a nominee farmer's name, thereby influencing the FCIC to pay an indemnity payment to the Defendant to which he was not entitled.

(g) Regarding Count 3, on November 5, 2018, the Defendant certified a production worksheet for Crop Year 2018 that failed to account for all of his production, including the production listed under a nominee farmer's name, thereby influencing the FCIC to pay an indemnity payment to the Defendant to which he was not entitled.

(h) Regarding Count 4, January 23, 2020, the Defendant certified a production worksheet for Crop Year 2019 that failed to account for all of his production, including the production listed under a nominee farmer's name, thereby influencing the FCIC to pay an indemnity payment to the Defendant to which he was not entitled.

 (i) Regarding Count 5, December 21, 2020, the Defendant certified a production worksheet for Crop Year 2020 that failed to account for all of his production, including the production listed under a nominee farmer's name, thereby influencing the FCIC to pay an indemnity payment to the Defendant to which he was not entitled.

 (j) Regarding Count 6, February 21, 2023, the Defendant certified a production worksheet for Crop Year 2022 that failed to account for all of his production, including the production listed under a nominee farmer's name, thereby influencing the FCIC to pay an indemnity payment to the Defendant to which he was not entitled.

 (k) Regarding Count 7, December 18, 2023, the Defendant certified a production worksheet for Crop Year 2023 that failed to account for all of his production, including the production listed under a nominee farmer's name, thereby influencing the FCIC to pay an indemnity payment to the Defendant to which he was not entitled.

 (l) In addition, for Crop Years 2016 through 2023, the Defendant submitted documents, like acreage reports, that were certified by the nominee farmers that were materially false, thereby influencing the FCIC to pay indemnity payments in the names of the nominee farmers. The Defendant controlled, and used, the indemnity payments for himself.

4. The statutory punishment for Counts 1 through 7 is imprisonment for not more than 30 years, a fine of not more than $1,000,000, or twice the gross gain or loss, and a term of supervised release of not more than 3 years. A mandatory special assessment of $700 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

 (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2024 manual, will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all false statements made to the United States Department of Agriculture, and the unlawful gains resulting therefrom.

    (c) Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is 7.

    (d) Pursuant to U.S.S.G. § 2B1.1(b)(1)(H), increase the offense level by 14 levels for a loss amount exceeding $550,000.

    (e) Pursuant to U.S.S.G. § 3B1.1(c), increase the offense by 2 levels because the defendant was an organizer or leader in the criminal activity.

    (f) Pursuant to U.S.S.G. § 2B1.1(b)(10)(C), increase the offense level by 2 levels because the offense involved sophisticated means.

    (g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6.    No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7.    The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8.    The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9.    The United States will recommend releasing the Defendant on the current conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

10. The Defendant consents to the imposition of a forfeiture money judgment in the amount of $1,060,460.00, which represents the approximate amount of proceeds that the Defendant obtained as a result of the offenses to which he is pleading guilty. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2. If the Defendant fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

11. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The Defendant agrees to a voluntary, five-year exclusion from participating in or receiving benefits from any federal procurement or non-procurement transaction in accordance with 2 C.F.R. § 180.1020(a) and 7 U.S.C. § 2209j(a). This means that the Defendant will be excluded from participating in most procurement and non-procurement

programs and activities unless such program is exempted under 2 C.F.R. § 180.215 and 2 C.F.R. § 417.215. The exclusion includes the USDA programs administered by the Risk Management Agency and the Farm Service Agency. The Defendant further agrees to be excluded from indirectly or directly holding any USDA certifications to produce or handle organic agricultural products through the USDA Agricultural Marketing Service National Organic Program (NOP). The Defendant further agrees to be excluded from participating in, receiving, or earning any income or any other benefit from the Federal Crop Insurance Program and the Farm Service Agency. As part of this agreement, Defendant agrees to waive any judicial or administrative right that he may have to challenge this voluntary exclusion. The Defendant further agrees that his voluntary, five-year exclusion shall still be valid even should there not be an available administrative mechanism to effectuate or enforce such exclusions. The Defendant's voluntary, five-year exclusion shall be effective upon the date this plea agreement is fully executed. Nothing in this paragraph shall be construed as to preclude the U.S. Department of Agriculture from seeking or obtaining any remedies as to the Defendant within its own administrative powers.

13. The Defendant agrees to pay restitution in an amount not less than $1,060,460.00 to the United States Department of Agriculture-Risk Management Agency, pursuant to 18 U.S.C. § 3663(a)(3). The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by Defendant in the factual basis.

14. The Defendant agrees to cooperate fully with the United States Attorney's

Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may

refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

15. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

16. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the

Defendant waives any right to challenge the initiation of additional federal charges.

17. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

18. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

19. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
ACTING UNITED STATES ATTORNEY

Date: 8·27·2025     By: _____
                         Andrea Mattingly Williams
                         Assistant United States Attorney

Date: 8/27/25           _____
                         Harlan Ray Highfield
                         Defendant

Date: 8/27/25           _____
                         Bradley Clark
                         Attorney for Defendant

9